REBECCA LIEBMAN, Plaintiff, *v.* JULIA H. HALL, Defendant.

(Supreme Court, Kings Trial Term, February, 1920.)

Specific performance — when refusal to take title on closing day does not preclude an action for specific performance — contracts — deeds — restrictions.

> The plaintiff in an action to compel specific performance of a contract to convey certain real property having been advised by a title company that a restriction in the deed of the same premises to defendant was still enforceable, declined on the day set for closing the title to accept a deed of the premises unless defendant would agree to a reduction of the purchase price. *Held,* that as before the contract was signed, defendant had been informed that it was the intention of plaintiff to erect one-family semi-detached dwellings on the premises, the conduct of plaintiff in regard to not accepting the deed was not entirely without justification and did not preclude her thereafter from insisting upon a performance of the contract by defendant.
>
> Plaintiff having acted in good faith and being now willing to take the property subject to any restrictions referred to in the contract that may exist, without any reduction of the purchase price by reason thereof, was entitled to a decree of specific performance.

ACTION by the purchaser for specific performance of a contract for the sale of real property.

Max N. Koven (Albert A. Hovell, of counsel), for plaintiff.

Thomas Gregory, for defendant.

FABER, J. On June 29, 1903, the Eastern Parkway Company conveyed the real property involved in this action, and other real property, to John H. Millar, by a deed containing the following restriction: "And the party of the second part hereby covenants and agrees

for himself, his heirs and assigns, with the party of the first part, its successors and assigns, that neither he or they shall construct or erect upon any of the lots of land situated on President street hereby conveyed, or intended so to be, any building except detached dwelling houses on lots· fifty feet front, or more, to cost not less than Ten thousand Dollars.'' Thereafter, Millar conveyed to the defendant by a deed containing the same restriction.

After her purchase of the property, and in the year 1906, the defendant procured from the Eastern Parkway Company a written instrument purporting to release the property from the above restriction. Thereafter a corporation known as Rowe & Company, which had purchased another portion of the original tract, subject to the restriction, brought a suit against the present defendant to cancel such release of the restriction and to restrain the defendant from erecting any buildings in violation of such restriction. The plaintiff in such suit was successful, and by the decree made therein the defendant was restrained and enjoined from conveying or attempting to convey any part of the premises free from the restriction above mentioned. About the same time another suit against the present defendant, brought by a party named Dahl for similar relief, was dismissed on the ground that Dahl had no standing to enforce the restriction. Thereafter, on December 3, 1908, the defendant entered into an agreement with Rowe & Company in reference to said restriction wherein it was provided that such restriction be changed and modified so as to read as follows: ''And the party of the second part hereby covenants and agrees for himself, his heirs and assigns, with the party of the first part, its successors and assigns, that neither he nor they shall construct or erect upon any

of the lots of land situated on President Street hereby conveyed, or intended so to be, any building except detached dwelling houses on lots fifty feet front, or more, to cost not less than Ten Thousand Dollars; or one family private dwelling houses in groups of not more than four houses built adjoining each other, provided that the main outer wall of each group of houses shall be separated from the main outer wall of the nearest adjacent house or group of houses by a space of not less than eighteen feet, or semi-detached one family private dwelling houses on plots of fifty feet front, or more, the main outer walls of which shall be located not less than eight feet from the line of the next adjoining lot.''

On March 22, 1919, the defendant entered into a written contract with the plaintiff whereby she agreed to sell to the plaintiff a plot of land fifty feet in width on the northerly side of President street, which was a portion of the premises that she had purchased from Millar. The contract provided that the property should be conveyed subject to '' any restrictions contained in a certain agreement recorded in the office of the Register of the County of Kings in Section 5, Liber 3113 of Conveyances, page 327; and also the rights, if any, of the owner of adjacent property to enforce certain restrictive covenants contained in prior deeds of conveyance of said premises recorded in the office of said Register in Section 5, Liber 26 of Conveyances, pages 234 and 239.'' The agreement recorded in liber 3113 of Conveyances, at page 327, was the agreement between Rowe & Company and the defendant heretofore mentioned, and the deeds recorded in liber 26, pages 234 and 239, were the deeds by the Eastern Parkway Company to Millar and by Millar to the defendant.

The evidence shows that before the contract between

the plaintiff and the defendant was signed there were some conversations between the representative of the plaintiff and the husband of the defendant (who represented the defendant throughout the transaction) relative to restrictions on the property, and that as a result of these conversations the defendant's husband gave to the plaintiff's representative a paper writing reading as follows: " Substance of restrictions on property President Street and Eastern Parkway, Brooklyn, N. Y., filed in the Register's Office, Kings County, in Section 5, Liber 26, Page 239, and Liber 3113, page 327, of Conveyances. And the party of the second part hereby covenants and agrees for himself, his heirs and assigns, with the party of the first part, its successors and assigns, that neither he nor they shall construct or erect upon any of the lots of land situate on President Street, hereby conveyed, or intended so to be, any building except detached dwelling houses on lots fifty feet front, or more, to cost not less than ten thousand dollars; or one family private dwelling houses in groups of not more than four houses built adjoining each other, provided that the main outer wall of each group of houses shall be separated from the main outer wall of the nearest adjacent house or group of houses by a space of not less than eighteen feet, or semi-detached one family private dwelling houses on plots of fifty feet front, or more, the main outer walls of which shall be located not less than eight feet from the line of the next adjoining lot."

It further appears that before the contract was signed, the attorney who represented the plaintiff in the transaction notified the defendant that it was the plaintiff's purpose in buying the property to erect two one-family semi-detached dwellings thereon, and that he had been advised by a title company that such

intention could be carried out provided the restrictions set forth in the paper writing above mentioned were the only restrictions against the property, and that defendant's husband thereupon stated that there were no other restrictions.

Between the date of the making of the contract of sale and the day set for the closing of the title, viz., May 20, 1919, the plaintiff caused the title to the property to be examined by a title company and was advised by such title company that in its opinion the agreement between Rowe & Company and the defendant purporting to be a modification of the original restriction, was not signed by all the necessary parties, and that the original restriction in the deed by Millar to the defendant remained enforcible by any person who might have purchased a portion of the original tract between the date of the creation of the restriction and the attempted modification of the same by said agreement.

On May 20, 1919, the day designated in the contract for the closing of the title, an adjournment of two days was granted on request of the plaintiff and upon the plaintiff's representation that the title company had not completed its search of the title. On May 22, 1919, the parties met in the office of defendant's husband, pursuant to such adjournment. There is a sharp conflict in the testimony as to just what occurred on that occasion. The testimony of plaintiff's witnesses is to the effect that the attorney who represented the plaintiff reproached the defendant's husband with having misled him as to the nature of the restrictions on the property, and that the defendant's husband thereupon agreed to confer with the title company and endeavor to persuade the title company that it was wrong in its opinion that the original restriction in the deed by Millar was still effective,

24

Supreme Court, February, 1920.    [Vol. 110.

and that the closing of the title was thereupon
adjourned indefinitely to enable the defendant's hus-
band to so confer with the title company. The testimony
of the defendant's witnesses, on the other hand, is
to the effect that the plaintiff definitely refused on
May twenty-second to take title to the property,
because of the restriction, and declared that the con-
tract was at an end and demanded a return of the
amount paid on account. It is undisputed that sub-
sequent to May twenty-second the defendant's hus-
band, by his attorney, did confer with the title com-
pany relative to the restrictions upon the property
in question, and delivered to the title company, for its
inspection, certain documents which he claimed sup-
ported his contention that the original restriction in
the Millar deed was no longer enforcible. His
explanation of his conduct in this regard is that the
defendant, being the owner of other property embraced
in the Millar deed, was interested in convincing the
title company that the position which it had taken in
this particular transaction was erroneous. It is also
undisputed that on or about June 21, 1919, the defend-
ant made a written contract with one Jacob S. Becker
to sell to the said Becker a plot of land 100 feet in
width on the northerly side of President street,
including the plot which she had theretofore con-
tracted to sell to the plaintiff. The contract with Becker
contained a provision, in substance, that if the vendee
rejected the title the vendor should return the deposit
of $2,000 paid on the signing of contract, and should
pay the further sum of $100 as liquidated damages,
and expenses and disbursements in connection with the
examination of title. On or about the same day that
this contract with Becker was signed, the defendant's
husband withdrew from the title company the docu-
ments that he had theretofore submitted to it for

inspection, as above stated, and notified the company that it need proceed no further in the matter.

On June 26, 1919, the plaintiff filed the complaint and *lis pendens* in the present action in the county clerk's office, and on or about July 19, 1919, the defendant, having learned of the filing of such papers, appeared voluntarily in the action, without actual service of the summons upon her.

Since the commencement of the action the complaint, which originally prayed judgment for a specific performance of the contract between the plaintiff and the defendant, but that a just deduction from the purchase money be made by reason of the fact that the premises were affected by restrictions other than those represented by the defendant, has been amended so as to demand judgment for the specific performance of the contract, without any deduction from the purchase money by reason of restrictions, or if for any reason specific performance cannot be had, that the defendant pay to the plaintiff the amount heretofore paid on account of the purchase price together with the sum of $344 incurred by the plaintiff for legal charges and the examination of title.

As the plaintiff is now willing to take the property subject to any restrictions that may exist, without any deduction from the purchase price by reason of such restrictions, I do not deem it necessary to determine whether the agreement of December 3, 1908, between Rowe & Company and the defendant, which was designed to modify the restriction in the Millar deed, was sufficient to accomplish that purpose. It seems to me that the only question to be determined is whether the conduct of the plaintiff has been such as to preclude her from now insisting upon a performance of the contract by the defendant. I do not think that it has. It is true that the plaintiff on May

twenty-second, the adjourned date for the closing of the title, having been advised by the title company that the restriction contained in the Millar deed was still enforcible, declined to accept a deed of the premises, unless the defendant would agree to a reduction of the purchase price. It seems to me, however, that the plaintiff's conduct in this regard was not entirely without justification. Before the signing of the contract the defendant had been informed that it was the intention of the plaintiff to erect two one-family semi-detached dwellings on the premises, and that for that reason it was important that the plaintiff should know exactly what restrictions were upon the premises. In answer to the plaintiff's inquiries regarding restrictions, the defendant gave the plaintiff the paper writing heretofore mentioned, which purported to state the substance of the restrictions upon the property, and informed the plaintiff verbally that there were no other restrictions. To my mind the written statement of the substance of the restrictions so delivered to the plaintiff was misleading. Any one, whether a layman or a lawyer, reading such statement, would be justified in concluding therefrom that the erection of semi-detached one-family dwelling houses or the erection of one-family dwelling houses in groups of not more than four houses was permissible, as well as the erection of detached dwelling houses. In the statement delivered to the plaintiff the restrictions are in the alternative, such statement being a verbatim copy of the restrictions set forth in the modification agreement of December 3, 1908, between Rowe & Company and the defendant. The original restriction, however, contained in the Millar deed was not in the alternative. That restriction prohibited the erection of any buildings except detached dwelling houses on lots fifty feet front or

more, to cost not less than $10,000. Under that restriction, it is clear that the plaintiff could not erect the two semi-detached one-family dwellings, which she contemplated, on the plot that she had contracted to purchase; and if it be assumed that the modification agreement between Rowe & Company and the defendant was inoperative, such original restriction was still enforcible.

The fact that the statement of restrictions delivered to plaintiff contained a reference to the libers and pages of record of the Millar deed and the modification agreement, did not, in my opinion, impose any duty upon the plaintiff to investigate the records prior to signing the contract.

Although the statement was entitled " substance of restrictions," quotation marks were employed in such manner as to warrant the conclusion that the restrictions set forth in the statement were verbatim copies of the restrictions contained in the recorded instruments referred to. Moreover, I fail to see how any examination by the plaintiff of the records referred to in the statement, prior to the signing of the contract, could have affected the situation. The vital point of controversy between the parties later on was not as to the precise wording of the restrictions or even as to their meaning, but whether the more stringent restriction concededly embodied in the earlier deeds was still enforcible, notwithstanding its attempted modification by the agreement between Rowe & Company and the defendant. A mere examination of the records referred to in the written statement delivered to the plaintiff would not have solved this question. It could be solved only by an examination of the title to the entire tract orginally affected by the restriction. Clearly the plaintiff was under no

Supreme Court, February, 1920. [Vol. 110.

obligation to make a complete search of the title before signing the contract.

The evidence warrants the conclusion that the defendant was fully cognizant of the fact that there were purchasers of other portions of the original tract who might be in a position to enforce the restriction in the deeds. Such being the case, I think that it was the duty of the defendant, when the plaintiff made her inquiries regarding restrictions, either to decline to give any information at all on that point, or to state frankly the real situation. Instead of so doing she gave the plaintiff a verbatim copy of the alternative restrictions contained in the agreement with Rowe & Company, which clearly permitted the erection of semi-detached dwelling houses on the premises, and informed the plaintiff that there were no other restrictions.

Notwithstanding the misleading statements of the defendant prior to the signing of the contract, which seems to me to have furnished considerable justification for the attitude of the plaintiff on the day of closing, I might hesitate to decree specific performance in favor of the plaintiff, were it not for the subsequent conduct of the defendant. If the defendant on the day of closing had clearly and unequivocally refused to proceed further under her contract with the plaintiff, and if her later conduct had been consistent with such refusal, I should be inclined to leave the plaintiff to her remedy by way of damages, especially in view of the later contract by the defendant to convey the premises to Becker. The evidence, however, preponderates in favor of the plaintiff's contention, that the defendant did not, on the day of closing, refuse to proceed further under the contract, but that, on the contrary, defendant's husband agreed to take the matter up with the title company, and try

to convince the title company that the original restriction was no longer enforcible, and that an indefinite adjournment of the closing of the title was taken for that purpose. As heretofore stated, the undisputed evidence shows that defendant's husband did, almost immediately, confer with the title company in regard to the restrictions, and furnished to the title company certain documents in support of his contention. His explanation that he did this because of the defendant's ownership of other property subject to the same restrictions, is not convincing. If his consultation with the title company had no reference to the contract between the defendant and the plaintiff, why did he withdraw his documents from the title company and notify the latter that it need proceed no further in the matter, on or about the very day that the defendant made her contract with Becker, and before the title company had concluded its investigation?

Plaintiff, it seems to me, acted in good faith, and her objection based upon the said restrictions being not wanton or frivolous, and she having acted without undue delay and being willing to accept the property subject to the restrictions referred to in the contract, specific performance should be decreed. *Kahn v. Chapin,* 152 N. Y. 305. Judgment for the plaintiff, with costs.

Judgment accordingly.